UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BENJAMIN BRAATEN and
REBECCA BRAATEN,

     Plaintiffs,

                                 CASE NO.:

-VS-
                                **JURY TRIAL DEMANDED**

LOANCARE, LLC,

     Defendant.

_____/

## COMPLAINT

Plaintiffs, Benjamin Braaten and Rebecca Braaten (hereinafter "Plaintiffs"), by and through the undersigned counsel, sues Defendant, LoanCare, LLC (hereinafter "LoanCare" or "Defendant"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

## PRELIMINARY STATEMENT

1.    This is an action for actual damages, statutory damages, punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1681 *et seq.* ("FCRA").

2.     Today in America there are three major consumer reporting agencies, Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian") and Trans Union LLC ("Trans Union").

3.     Consumer reporting agencies that create consumer reports, like Equifax, Experian, and Trans Union, are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities like LoanCare, particularly where a consumer makes a dispute about information reported.

4.     When a consumer like Plaintiff disputes information through the consumer reporting agencies, those disputes are transmitted to the party furnishing the information, here LoanCare. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

5.     The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

## JURISDICTION

6.      The jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1).

8.      Venue is proper in this District as Plaintiffs reside in this District, the violations described in this Complaint occurred in this District, and the Defendant transacts business within this District.

9.      The Plaintiffs are natural persons and residents of the State of Georgia, residing in Fulton County, Georgia.

10.     Plaintiffs are "consumer(s)" as defined by 15 U.S.C. § 1681a(c).

11.     LoanCare is a Virginia company with a principal place of business located at 3637 Sentara Way, Virginia Beach, Virginia, 23452, whose Registered Agent is, CT Corporation System, 289 South Culver Street, Lawrenceville, Georgia, 30046.

12.     LoanCare is a "furnisher of information" as that term is used in 15 U.S.C. § 1681s-2.

## FACTUAL ALLEGATIONS

13.     In or about 2005, Plaintiffs purchased a home in Polk County, Florida.

14.     At the time, Plaintiffs obtained a mortgage to help pay for the home.

15.     In early 2018, Plaintiffs were no longer able to afford the mortgage and began to fall behind on the mortgage payments.

16.     Ditech Financial, LLC was the loan servicer at that time, and was reporting the status of the mortgage, correctly, to the consumer reporting agencies.

17.     In fact, Ditech Financial, LLC had been correctly reporting the status of the mortgage for over five years.

18.     Eventually in November of 2018, Plaintiffs reached an agreement with Federal National Mortgage Association, the note holder, to convey title to the home by Deed in Lieu of Foreclosure.

19.     After the Deed in Lieu of Foreclosure, Ditech Financial, LLC reported the Deed in Lieu of Foreclosure and reported the balance as being "$0" to all three Credit Reporting Agencies ("CRAs"), Equifax, Experian and Trans Union.

20.     There was no subsequent reporting of the mortgage at this time and the account was closed.

21.     In the summer of 2019, a new tradeline from LoanCare began appearing on Plaintiffs' credit reports.

22.     At first Plaintiffs' had no idea what this account was pertaining to.

23.     A closer examination revealed that it had the exact same opening date as the prior mortgage and was also showing a "DLU" or Deed in Lieu of Foreclosure in late 2018.

24.     However, the LoanCare account was also reporting as being an active mortgage.

25.     The LoanCare account was being reported as extremely late and with a balance of over $250,000.00.

26.     It was apparent that LoanCare was reporting the Polk County residence as still belonging to the Plaintiffs.

27.     If someone were to review the Plaintiffs' credit reports they would have no choice, but to believe Plaintiffs had an active mortgage that was not being paid.

28.     Plaintiffs reached out numerous times to LoanCare in the summer of 2019 to have them correct the situation.

29.     Plaintiffs even showed LoanCare that the property in question had been sold multiple times.

30.     Inexplicably, in the summer of 2019, LoanCare also began sending correspondence to the Plaintiffs.

31.     The correspondence clearly indicated that they were acting as the loan servicer for the Polk County residence.

32.     The correspondence was demanding that the Plaintiffs provide proof of hazard insurance on the property or that LoanCare would obtain insurance coverage and have the Plaintiffs reimburse them.

33.     At the time of this correspondence, public records showed that SR Investments of Tampa, LLC was the owner of the property.

34.     LoanCare never did anything to correct the reporting on Plaintiff's credit reports.

35.     In or about June of 2020, Benjamin Braaten mailed a written dispute letter to Equifax concerning the erroneous reporting of the LoanCare account.

36.     In or about June of 2020, Rebecca Braaten mailed a written dispute letter to Equifax concerning the erroneous reporting of the LoanCare account.

37.     In or about June of 2020, Benjamin Braaten mailed a written dispute letter to Experian concerning the erroneous reporting of the LoanCare account.

38.     In or about June of 2020, Rebecca Braaten mailed a written dispute letter to Experian concerning the erroneous reporting of the LoanCare account

39.     In or about June of 2020, Benjamin Braaten mailed a written dispute letter to Trans Union concerning the erroneous reporting of the LoanCare account.

40.     In or about June of 2020, Rebecca Braaten mailed a written dispute letter to Trans Union concerning the erroneous reporting of the LoanCare account

41.     In the aforementioned letters from June, the Plaintiffs explained in detail the true history of the account.

42.     Attached to the aforementioned letters from June, the Plaintiffs included a copy of the executed Deed in Lieu of Foreclosure and a print out from the Polk County property appraisers website showing the subsequent sales of the property.

43.     In or about August of 2020, Benjamin Braaten mailed a written dispute letter to Equifax concerning the erroneous reporting of the LoanCare account.

44.     In or about August of 2020, Rebecca Braaten mailed a written dispute letter to Equifax concerning the erroneous reporting of the LoanCare account.

45.     In or about August of 2020, Benjamin Braaten mailed a written dispute letter to Experian concerning the erroneous reporting of the LoanCare account.

46.     In or about August of 2020, Rebecca Braaten mailed a written dispute letter to Experian concerning the erroneous reporting of the LoanCare account

47.     In or about August of 2020, Benjamin Braaten mailed a written dispute letter to Trans Union concerning the erroneous reporting of the LoanCare account.

48.     In or about August of 2020, Rebecca Braaten mailed a written dispute letter to Trans Union concerning the erroneous reporting of the LoanCare account

49.     In the aforementioned letters from August, the Plaintiffs again explained in detail the true history of the account.

50.     Attached to the aforementioned letters from August, the Plaintiffs again included a copy of the executed Deed in Lieu of Foreclosure and a print out from the Polk County property appraisers website showing the subsequent sales of the property

51.     Every CRA responded to every dispute indicating that the LoanCare account was reporting accurately.

52.     None of the letters Plaintiffs sent to the CRAs provided any relief for the Plaintiffs.

53.     Upon information and belief, LoanCare to this date, has never informed Experian that Benjamin Braaten is not responsible for the alleged debt.

54.     Upon information and belief, LoanCare to this date, has never informed Experian that Rebecca Braaten is not responsible for the alleged debt.

55.   Upon information and belief, LoanCare to this date, has never informed Equifax that Benjamin Braaten is not responsible for the alleged debt.

56.   Upon information and belief, LoanCare to this date, has never informed Equifax that Rebecca Braaten is not responsible for the alleged debt.

57.   Upon information and belief, LoanCare to this date, has never informed Trans Union that Benjamin Braaten is not responsible for the alleged debt.

58.   Upon information and belief, LoanCare to this date, has never informed Trans Union that Rebecca Braaten is not responsible for the alleged debt.

59.   Upon information and belief, every dispute sent by the Plaintiffs to the CRAs was transmitted to LoanCare for review.

60.   A reasonable investigation by LoanCare would have shown that the Plaintiffs were not the current owners of the property in Polk County.

61.   Upon information and belief, LoanCare merely took a quick glance at the account in question without doing any actual investigation.

62.   As a result of the inaccurate credit reporting, Benjamin Braaten has suffered damages, including, but not limited to:

    i.   Monies lost by attempting to fix his credit;

    ii.   Loss of time;

iii.   Inability to obtain automobile financing;

iv.   Stress, aggravation, and other related impairments to the enjoyment of life.

63.    As a result of the inaccurate credit reporting, Rebecca Braaten has suffered damages, including, but not limited to:

i.    Monies lost by attempting to fix her credit;

ii.   Loss of time;

iii.   Inability to obtain consumer financing;

iv.   Stress, aggravation, and other related impairments to the enjoyment of life.

64.    All conditions precedent to the filing of this action have occurred.

## COUNT I
### Violation of the FCRA § 1681s-2(b) by LoanCare, LLC, as to Plaintiff, Benjamin Braaten

65.    Benjamin Braaten re-states and incorporates his allegations in paragraphs one (1) through sixty-four (64), including subparts, as if fully set forth herein.

66.    LoanCare is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher" as codified at 15 U.S.C. § 1681s-2.

10

67.    LoanCare published false information about Benjamin Braaten owing a debt, to the CRAs and through the CRAs to Benjamin Braaten's potential lenders.

68.    LoanCare violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Benjamin Braaten's disputes of the alleged debt owed; by failing to review all relevant information regarding same; by failing to accurately respond to the CRAs; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the LoanCare representations to the consumer reporting agencies.

69.    LoanCare violated 15 U.S.C. §1681s-2(b) by continuing to furnish inaccurate information to the CRAs after LoanCare had been notified of the disputes and that the information was inaccurate.

70.    LoanCare did not have any reasonable basis to believe that Benjamin Braaten was responsible for the debt allegedly owed. It also had substantial evidence by which to have verified that Benjamin Braaten was not the responsible party. LoanCare knowingly chose to follow procedures which did not review, confirm or verify the validity of the debt in question. Further, even if LoanCare

would attempt to plead ignorance, it had all of the evidence and information with which to recognize and confirm Benjamin Braaten was not liable.

71.     As a result of LoanCare's conduct, action and inaction, Benjamin Braaten suffered damage by loss of time due to his attempts to correct the inaccurate information; stress; and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials.  Benjamin Braaten has also been delayed in obtaining credit to purchase an automobile.

72.     LoanCare's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Benjamin Braaten to recover actual damages under 15 U.S.C. § 1681o.

**WHEREFORE**, Benjamin Braaten respectfully demands a trial by jury on all issues so triable and judgment against Defendant, LOANCARE, LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## COUNT II
**Violation of the FCRA § 1681s-2(b) by LoanCare, LLC,
as to Plaintiff, Rebecca Braaten**

73.     Rebecca Braaten re-states and incorporates her allegations in paragraphs one (1) through sixty-four (64), including subparts, as if fully set forth herein.

74.     LoanCare is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher" as codified at 15 U.S.C. § 1681s-2.

75.     LoanCare published false information about Rebecca Braaten owing a debt, to the CRAs and through the CRAs to Rebecca Braaten's potential lenders.

76.     LoanCare violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Rebecca Braaten's disputes of the alleged debt owed; by failing to review all relevant information regarding same; by failing to accurately respond to the CRAs; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the LoanCare representations to the consumer reporting agencies.

77.   LoanCare violated 15 U.S.C. §1681s-2(b) by continuing to furnish inaccurate information to the CRAs after LoanCare had been notified of the disputes and that the information was inaccurate.

78.   LoanCare did not have any reasonable basis to believe that Rebecca Braaten was responsible for the debt allegedly owed. It also had substantial evidence by which to have verified that Rebecca Braaten was not the responsible party. LoanCare knowingly chose to follow procedures which did not review, confirm or verify the validity of the debt in question. Further, even if LoanCare would attempt to plead ignorance, it had all of the evidence and information with which to recognize and confirm Rebecca Braaten was not liable.

79.   As a result of LoanCare's conduct, action and inaction, Rebecca Braaten suffered damage by loss of time due to her attempts to correct the inaccurate information; stress; and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials.  Rebecca Braaten has also been delayed in obtaining credit to purchase consumer items.

80.   LoanCare's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was

negligent, entitling Rebecca Braaten to recover actual damages under 15 U.S.C. § 1681o.

WHEREFORE, Rebecca Braaten respectfully demands a trial by jury on all issues so triable and judgment against Defendant, LOANCARE, LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

*/s/ Octavio Gomez*
Octavio Gomez
Georgia Bar No.: 617963
Morgan & Morgan, Tampa, P.A.
201 North Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 559-4845
TGomez@ForThePeople.com
JDerry@ForThePeople.com;
JKneeland@ForThePeople.com
*Attorney for Plaintiff*